UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

KAREEM FAUNTLEROY,                          MEMORANDUM AND ORDER
                                            00 CV 2209 (JG)
                Petitioner,

        -v-

CHRISTOPHER ARTUZ,
Superintendent of
Green Haven Correctional Facility,

                Respondent.
----------------------------------------------------------------x

KAREEM FAUNTLEROY,

                Petitioner,

        -v-

J. PLESCIA,                                 MEMORANDUM AND ORDER
Superintendent of                           04 CV 3883 (JG)
Shawangunk Correctional Facility,

                Respondent.
----------------------------------------------------------------x

A P P E A R A N C E S:

    KAREEM FAUNTLEROY
        #96A6869
        Shawangunk Correctional Facility
        P.O. Box 700
        Wallkill, NY 12589
        Petitioner *Pro Se*

    CHARLES J. HYNES
        District Attorney
        Kings County
        350 Jay Street
        Brooklyn, New York 11201-2908
  By:    Cynthia Kean
        Assistant District Attorney
        Attorneys for Respondent

JOHN GLEESON, United States District Judge:

Petitioner Kareem Fauntleroy seeks habeas corpus relief from his state court convictions, claiming that he received ineffective assistance of appellate counsel. I held argument by telephone conference on June 3, 2005. For the reasons set forth below, the petition is denied.

BACKGROUND

By memorandum and order dated October 31, 2003, I denied Fauntleroy's initial petition for habeas relief. *Fauntleroy v. Artuz*, 00 cv 2209, 2003 WL 22670906 (E.D.N.Y. Oct. 31, 2003). I assume familiarity with the facts set forth in that opinion, and recite only the relevant details here.

The evidence at trial established that on July 27, 1995, at about 10:00 p.m., Fauntleroy robbed a bodega in Bedford-Stuyvesant, killing a father and son who owned the store. Fauntleroy shot the father seven times and the son twice, and fled with a bullet in his own chest, fired by the son from a gun kept at the store. Fauntleroy was arrested at Woodhull Hospital, where he had gone for treatment, after an eyewitness identified him.

Fauntleroy was convicted by a jury of two counts of intentional murder in the second degree, two counts of felony murder in the second degree, and one count each of robbery in the first degree and criminal possession of a weapon in the second and third degrees. He was sentenced to consecutive sentences of 25 years to life on the two intentional murder counts; consecutive sentences of 25 years to life on the two felony-murder counts (to run concurrently with the intentional murder sentences); 12 ½ to 25 years for robbery in the first degree, 7 ½ to 15

years for criminal possession of a weapon in the second degree, and 3 ½ to 7 years for criminal possession in the third degree (to run concurrent to the murder sentences).

Fauntleroy, through counsel, appealed to the Appellate Division, Second Department. Appellate counsel argued that (1) Fauntleroy was denied a fair trial by the court's undue interference in his trial; (2) Fauntleroy was denied due process by the court's refusal to grant a missing witness charge; and (3) the evidence against him was legally insufficient. On February 22, 1999, the Appellate Division unanimously affirmed Fauntleroy's judgment of conviction. *People v. Fauntleroy*, 258 A.D.2d 664 (2d Dep't 1999). On May 5, 1999, Fauntleroy's application for leave to appeal to the Court of Appeals of New York was denied. *People v. Fauntleroy*, 93 N.Y.2d 924 (1999) (Wesley, J.).

Fauntleroy petitioned for habeas corpus relief in this court, alleging the three claims raised in his Appellate Division brief and requesting, as a fourth claim, that I review the record for "harmful issues" not raised by appellate counsel. I found that Fauntleroy was not entitled to habeas relief based on the three claims raised in his appellate brief. It was unclear from Fauntleroy's petition whether his fourth claim was one of ineffectiveness assistance of appellate counsel. At oral argument of his initial petition, Fauntleroy clarified the issue, stating that he wanted me to review the record "on a whole" in deciding his claims. I did not interpret this request as a claim of ineffective assistance of counsel, but even assuming that such a claim had been raised, I found that it would have no merit:

> Fauntleroy has failed to demonstrate in this case that his appellate counsel's actions amount to constitutionally inadequate performance. In his 34-page brief to the Appellate Division, Fauntleroy's appellate counsel focused on three issues that, he urged, warranted a reversal of Fauntleroy's conviction: (1) the

> judge's interference with direct and cross examinations in a way
> that bolstered the government's case; (2) the trial court's refusal to
> issue a missing witness charge; and (3) the insufficiency of the
> evidence. The brief included a detailed review of the evidence
> presented at trial as well as citations to the record. Further,
> Fauntleroy fails to allege what claims or issues his appellate
> counsel failed to raise, simply asking that I review the record for
> "harmful issues." Fauntleroy, therefore, has shown neither that his
> appellate counsel's performance fell below an objective standard of
> reasonableness, nor that he was prejudiced by his appellate
> counsel's decisions.

2003 WL 22670906, at *5. To the extent Fauntleroy requested that I review his record for claims not raised in state court, I declined to do so, as any such claims would be unexhausted. Finding that none of the claims in Fauntleroy's initial petition warranted habeas relief, I denied the petition on October 31, 2003. Fauntleroy appealed that decision to the Second Circuit.

On February 23, 2004, Fauntleroy moved in the New York State Supreme Court, Appellate Division, for a writ of error *coram nobis*. Fauntleroy argued that his appellate counsel had been ineffective because he failed to assert that (1) the evidence was insufficient; (2) Fauntleroy's conviction violated the Double Jeopardy clause and principles of collateral estoppel; and (3) the trial court erred by not charging both "depraved indifference" murder and intentional murder. The Appellate Division denied the application on June 21, 2004, finding that Fauntleroy failed to establish that he was denied effective assistance of appellate counsel. *People v. Fauntleroy*, 778 N.Y.S.2d 708 (2d Dep't 2004). The Court of Appeals denied Fauntleroy's application for leave to appeal on August 13, 2004. *People v. Fauntleroy*, 784 N.Y.S.2d 12 (Graffeo, J.).

In papers dated August 28, 2004, Fauntleroy filed another habeas petition in this

court, alleging ineffectiveness of appellate counsel grounded in the same three claims brought in his *coram nobis* motion.[1]

On September 15, 2004, I transferred this second petition to the court of appeals because it appeared to be a successive petition. *See* 28 U.S.C. § 2244(b)(3)(A) (before a second or successive § 2254 petition may be filed in the district court, "the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."). However, on January 4, 2005, the Second Circuit vacated my order transferring the case. It explained that I should have construed Fauntleroy's second habeas petition as a motion to amend the initial petition because Fauntleroy's certificate of appealability application relating to the first petition was still pending before the circuit court. In other words, though I had entered judgment on the initial petition, the Second Circuit had not. Therefore, the Second Circuit directed that I "construe the second filed petition as a motion to amend, and . . . consider whether the issues raised in the motion to amend relate back to the issues raised in the original 28 U.S.C. § 2254 petition." *Fauntleroy v. Plescia*, 04-1845-pr; 04-5266-op (2d Cir. Jan. 4, 2005).

DISCUSSION

A.   Relation Back

Whether an amended habeas petition relates back to an initial petition for timeliness purposes is governed by Federal Rule of Civil Procedure 15(c). *See Mayle v. Felix*, 2005 WL 1469153, at *7-*8 (June 23, 2005); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 816 (2d Cir. 2000). That section provides in relevant part: "An amendment of a pleading relates

---

[1] This second petition was filed under docket number 04 cv 3883. By order dated March 7, 2005, I directed the Clerk of this Court to consolidate the contents of the 04 cv 3883 file into 00 cv 2209.

5

back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. Proc. 15(c). In determining whether an amended habeas petition relates back, a court analyzes whether the petition "asserts a new ground of relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 2005 WL 1469153, at *4; *see also Fama*, 235 F.3d at 815 (a claim arises out of the same conduct or occurrence where the original petition gave the respondent fair notice of the newly alleged claim).

Here, Fauntleroy requested as a ground for relief in his initial petition that I review the record "to see harmful issues that wasn't [sic] raised in my brief by my appellant [sic] counsel." While I found, based on Fauntleroy's clarification at oral argument, that he was not raising an ineffective assistance of appellate counsel claim, that petition gave the respondent fair notice that Fauntleroy was contemplating such a claim. Indeed, respondent states that Fauntleroy "attempted to raise" the ineffectiveness claim in his first petition, and agrees with Fauntleroy that his original petition should be amended to include this claim. Resp. Br. at 2. Given the purpose of Rule 15(c) – "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities," *Fama*, 235 F.3d at 815 (internal quotations omitted) – I assume that Fauntleroy's claim of ineffective assistance of appellate counsel relates back to his initial petition. I thus proceed to the merits of the claim.

B.     The Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

7

Under AEDPA's deferential standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411); *see also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) ("Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable."). Interpreting *Williams*, however, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

AEDPA's deferential standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001). However, if a federal claim has not been adjudicated on the merits, AEDPA deference is not required. *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005) (citing *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).

Here, Fauntleroy's ineffective assistance of appellate counsel claim was

8

adjudicated on the merits in state court, and thus AEDPA deference applies.

C.  Fauntleroy's Ineffectiveness of Appellate Counsel Claim

Fauntleroy contends that his appellate counsel was ineffective because he failed to argue that: (1) the evidence was insufficient to convict him of robbery and felony-murder; (2) Fauntleroy's conviction violated double jeopardy principles; and (3) the trial court's failure to charge the jury with "depraved indifference" murder prevented the jury from determining that Fauntleroy acted recklessly and not intentionally.

The Supreme Court has established the following standard for ineffective assistance claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Thus, to make out an ineffective assistance claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In assessing the reasonableness of counsel's performance, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

9

under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation marks omitted); *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998).

In assessing counsel's performance, I "must conduct an objective review . . . measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland*, 466 U.S. at 688-89)). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct" and has instead emphasized that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* at 521 (quoting *Strickland*, 466 U.S. at 688).

To establish the requisite effect of counsel's performance on the outcome of the proceeding, it is not sufficient if the petitioner shows merely that counsel's errors had "some conceivable effect" on the outcome. *Strickland*, 466 U.S. at 693. Rather, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* This determination, unlike the determination whether counsel's performance fell below an objective standard of reasonableness, may be made with the benefit of hindsight. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Although the Supreme Court formulated the *Strickland* test in the context of examining a claim of ineffective assistance of trial counsel, the same test applies to claims grounded in the performance of appellate counsel. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d

Cir. 1994); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo*, 13 F.3d at 533 (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)); *see also Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (emphasizing that appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant") (emphasis in original). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices. *See Mayo*, 13 F.3d at 533 (citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). A petitioner, however, "may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.*

As discussed below, none of the claims that Fauntleroy faults appellate counsel for omitting would have had merit. Accordingly, he cannot show that appellate counsel acted ineffectively in failing to raise these claims on appeal.

1. The Insufficiency of the Evidence

Appellate counsel focused his appellate brief on three claims: the trial court's undue interference; the trial court's failure to give a missing witness charge; and the insufficiency of the evidence identifying Fauntleroy as the shooter. On the insufficiency claim, counsel argued that the testimony of four witnesses who identified Fauntleroy was inconsistent, biased, or unreliable; that the detective who investigated the murders failed to follow through on testimony that a man with braids fled the scene immediately after the gun shots (Fauntleroy had short hair at the time of the murders); that the testimony of Mickey Mayo and George Allen – "jailhouse" informants who testified that Fauntleroy confessed to the murders – was incredible; and that the state's expert was unable to find Fauntleroy's fingerprints on the weapon recovered by the police.

11

Fauntleroy contends that appellate counsel was ineffective because he neglected to argue that the testimony of the jailhouse informants should have been suppressed. Without that testimony, Fauntleroy contends, the evidence that he committed robbery would be insufficient (and accordingly, the evidence that he committed felony murder would be insufficient). In addition, Fauntleroy argues that the evidence was insufficient to convict him of two counts of felony murder because he was convicted of only one count of robbery.

As an initial matter, appellate counsel's decision to focus the insufficiency claim on the identification of Fauntleroy as the shooter, as opposed to whether there was evidence of robbery, was reasonable. Even were Fauntleroy able to show that there was insufficient evidence to convict him of robbery, it would likely have had no effect on his sentence: he received consecutive terms of 25 years to life for the two counts of intentional murder, and the robbery-related sentences (two counts of felony murder and robbery in the first degree) run concurrent to the sentences for intentional murder.

In any event, there is no merit to Fauntleroy's claims that the evidence was insufficient to convict him of robbery in the first degree.

a. <u>Admissibility of Jailhouse Statements</u>

When a confession is deliberately elicited by law enforcement in the absence of counsel and after the right to counsel has attached, the Sixth Amendment is violated. *See Brewer v. Williams*, 430 U.S. 387, 399 (1977). This rule applies to informants – including "jailhouse" informants – who deliberately engage a defendant in conversation to elicit a confession on behalf of law enforcement. *See Massiah v. United States*, 377 U.S. 201, 206 (1964).

A Sixth Amendment violation occurs, however, if the *government* deliberately

elicits incriminating remarks. *United States v. Edwards*, 342 F.3d 168, 182 (2d Cir. 2003) (internal quotation omitted). There is no infringement of the right to counsel when a jailhouse informant merely reports volunteered statements. *See Kuhlmann v. Wilson*, 477 U.S. 436, 460 (1986); *Edwards*, 342 F.3d at 182. "[A]n informant becomes a government agent for purposes of [the Sixth Amendment] only when the informant has been instructed by the police to get information about [a] particular defendant." *United States v. Birbal*, 113 F.3d 342, 246 (2d Cir. 1997).

Here, two jailhouse informants testified that Fauntleroy confessed to them his involvement in the shootings. Mickey Mayo testified that while awaiting arraignment, he was housed in the same cell as Fauntleroy, whom he recognized from the neighborhood. Mayo testified that Fauntleroy, without prompting, told Mayo that in the course of robbing a bodega, he shot two people and was himself shot in the chest. Mayo testified that Fauntleroy described the shootings in detail, and showed Mayo his bullet wound. (Tr. 393-98.) Mayo testified that he knew and liked the victims, and that after Fauntleroy described the shootings, Mayo called the police to tell them what Fauntleroy said. (Tr. 400-402.) The other informant, George Allen, testified that he and Fauntleroy became friends while they were incarcerated at the Brooklyn House of Detention, and that Fauntleroy told him of his involvement in the bodega murders. Allen testified that while subsequently being questioned by police about an unrelated murder, he told police about Fauntleroy's confession. (Tr. 667-675.) Neither Mayo nor Allen was instructed by the police to elicit information from Fauntleroy. Instead, Fauntleroy volunteered his statements, and Mayo and Allen reported those statements to the police after they were made. Accordingly, to the extent that Fauntleroy's right to counsel had attached prior to his confessions

to Mayo and Allen, that right was not infringed, and the testimony of Mayo and Allen was properly admitted.[2]

  b. Felony Murder

Fauntleroy argues that the evidence was insufficient to convict him of two counts of felony murder because he was only charged (and convicted) of one count of robbery. This argument is meritless. A person commits felony murder when he "commits or attempts to commit robbery [or other enumerated crimes] and, in the course of and in furtherance of such crime or of immediate flight therefrom, he . . . causes the death of a person other than one of the participants." N.Y. Penal Law § 125.25(3). There is no requirement that a defendant who causes the death of more than one person while committing a felony be charged with a separate felony correlated to each victim.

 2. Double Jeopardy

Fauntleroy argues that his conviction violated the Double Jeopardy clause of the Fifth Amendment, which states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This argument has no merit.

Fauntleroy first contends that he should not have been convicted of two counts of felony murder where he was convicted of only one count of robbery. This is the same argument that Fauntleroy styled as an insufficiency claim, and fails for the same reason. A person who

---

[2]  The admissibility of Mayo's testimony also disposes of Fauntleroy argument that there was no evidence that he committed robbery in the first degree, and thus there was insufficient evidence to convict him of felony-murder. Fauntleroy Aff., April 28, 2005 at 12-P. Fauntleroy's argument also suggests a misunderstanding on his part. The government was not required to prove *first degree* robbery in order to prove felony-murder. To establish felony murder, the government must prove only that a defendant, while committing or attempting to commit robbery, causes the death of a person other than one of the participants. N.Y. Penal Law § 125.25(3).

kills two people while committing robbery may be properly charged, and convicted, of two counts of felony murder without implicating the Double Jeopardy clause. Second, Fauntleroy argues that he was charged with crimes that all turned on the same factual predicate, that accordingly trial counsel should have challenged the indictment, and that appellate counsel erred by not making such an argument on appeal. *See Jackson v. Leonardo*, 162 F.3d 81, 85 (1998) (holding that charges of first degree robbery and criminal use of a firearm in the first degree both rest on precisely the same factual predicate, that trial counsel should have challenged the indictment to have one count removed, and that the failure to raise this "obvious" double jeopardy claim on appeal was ineffective performance by appellate counsel). The charges against Fauntleroy, however, are not analogous to the charges in *Jackson*;[3] they do not rest on "precisely the same factual predicate." 162 F.3d at 85. Where a person is charged with felony murder, the underlying "felony" "is not so much an element of the crime but instead functions as a replacement for the *mens rea* or intent necessary for common-law murder." *People v. Berzups*, 49 N.Y.2d 417 (1980). Felony murder and the underlying felony are "entirely separate and disconnected offenses," as are robbery in the first degree and criminal possession of a weapon in the second and third degrees. *Id.* (upholding convictions for felony murder, intentional murder, robbery in the first degree and possession of a dangerous weapon where defendants killed pharmacist during a holdup). Here, Fauntleroy was charged and convicted of six distinct

---

[3] In *Jackson*, the convictions that raised a double jeopardy claim were for first degree robbery and criminal use of a firearm in the first degree. To be convicted of criminal use of a firearm in the first degree, the government must show (1) that a person commits any class B violent felony offense and (2) possesses a deadly weapon. N.Y. Penal Law § 265.09. Under New York law, when "use of or display of a firearm is an element of a class B felony, the use or display of the same firearm cannot also be the predicate for criminal display of a firearm in the first degree." *People v. Brown*, 67 N.Y.2d 555, 560.

15

offenses, and his claim that these convictions violated the double jeopardy clause is meritless.[4]

   3.   Failure to Charge "Depraved Indifference" Murder

Fauntleroy argues that the trial court erred by not charging the jury with "depraved indifference" murder,[5] in addition to intentional murder, and that appellate counsel was ineffective for not making this argument. This claim has no merit. Fauntleroy does not explain why it was error for the trial court to charge only intentional murder, or how he was prejudiced by the court's decision.

In sum, none of the claims that Fauntleroy asserts appellate counsel should have argued have merit. There is no requirement that appellate counsel argue every possible claim, *see Jones*, 463 U.S. at 754, and certainly no requirement to argue frivolous ones. Fauntleroy cannot show that by failing to argue these meritless claims, his appellate counsel's representation fell below an objective standard of reasonableness. Nor can Fauntleroy show that he was prejudiced by appellate counsel's decisions. At the very least, the state court's finding that Fauntleroy received effective assistance of appellate counsel was not an unreasonable application of federal law.

---

[4] Fauntleroy's collateral estoppel argument appears to be a restatement of one of his double jeopardy claims. Fauntleroy states: "The constitutional bar against collateral estoppel, it guarantee against double jeopardy and precluded the state from relitigating the issue of whether defendant committed a second felony murder and/or underlying felony of robbery in the first degree, and related lesser offenses against Julio Antonio Melo. [sic]" Fauntleroy Aff. at 23-P. For the reasons discussed above, this claim is without merit.

[5] A person is guilty of murder in the second degree where "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law 125(2).

## CONCLUSION

For the foregoing reasons, the petition is denied. Because Fauntleroy has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.

So Ordered.

John Gleeson, U.S.D.J.

Dated: July 18, 2005
Brooklyn, New York